Angelo GIANACULAS; Ernest Buck and James Gregg, Plaintiffs-Appellants,

v.

TRANS WORLD AIRLINES, INC., a corporation, aka TWA, et al., Defendants-Appellees.

No. 84–1589.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 12, 1984.

Decided May 24, 1985.

Norris, Circuit Judge, dissented and filed an opinion.

Frank R. Ubhaus, Pitto, Ubhaus, Waite, & Fedeli, San Jose, Cal., for plaintiffs-appellants.

Michael A. Katz, New York City, for defendants-appellees.

Before MERRILL, CANBY and NOR-RIS, Circuit Judges.

MERRILL, Circuit Judge:

Angelo Gianaculus, James Gregg, and Ernest Buck, discharged employees of Trans World Airlines (TWA), appeal pursuant to 28 U.S.C. § 1291 from a grant of summary judgment in their suit against TWA for breach of contract and breach of an implied covenant of good faith and fair dealing. Appellants claim that as management employees they were protected by TWA's Management Policy and Procedure Manual (MP & P) from discharge without the opportunity to displace into certain other positions.

I

TWA is an interstate and international air carrier with its executive offices in New York. Angelo Gianaculus was hired by TWA on April 17, 1956 at San Francisco. Ernest Buck was hired by TWA on March 2, 1967 at St. Louis, Missouri. James Gregg was hired by TWA on June 8, 1964 at Dayton, Ohio. Each appellant completed

an employment application which set forth several conditions of employment. The fourth condition stated, "[i]f given employment, I hereby agree that such employment may be terminated by the company at any time without advance notice and without liability to me for wages or salary...." Other than the conditions stated in the employment application, there was no written employment contract.

In November 1981, appellants, then employed by TWA in management capacities in California, were notified that due to economic circumstances and reductions in operations and staffing levels, their positions would be abolished. Each appellant was offered continued employment in a specified non-management position. Appellants declined the positions offered and were furloughed in December 1981.

On September 20, 1982, appellants brought suit against TWA in Santa Clara County Superior Court. TWA was alleged to have breached its employment agreement with the appellants by failing to follow the terms of the MP & P. In particular, the appellants contended that section 10.49C4(a) of the MP & P permitted the use of seniority to displace to jobs reporting directly or functionally to the management position held at the time of furlough, that section 10.49C4(c) of the MP & P prevented the arbitrary and capricious choice of employees to be furloughed and that section 10.49D permitted the use of seniority to displace junior employees systemwide. The complaint asserted that the failure to follow these procedures constituted breach of the employment agreements and breach of the implied covenant of good faith and fair dealing existing in the employment agreements.

Pursuant to the diversity of citizenship provisions of 28 U.S.C. § 1441(b), TWA removed the action to the United States District Court for the Northern District of California and, following discovery, TWA moved for summary judgment.

The district court granted TWA's motion as to each of the claims made by Gianaculus, Buck and Gregg. The court found that

New York law governed the contract under California conflict of laws principles and that New York did not provide for recovery in this case. The court added that the appellants were also barred from recovery under California law.

We need not decide whether the case is governed by New York or California law, because recovery is precluded by the laws of both states. *See* Comment, *False Conflicts*, 55 Calif.L.Rev. 74, 76–77 (1967); Cavers, *The Choice of Law Process* (1965), p. 89 (where the laws of two states yield identical results, at most a "false conflict" is presented).

## II

The New York Court of Appeals has explicitly rejected the existence of implied covenants of good faith and fair dealing in at-will employment contracts. *Murphy v. American Home Products*, 58 N.Y.2d 293, 304–305, 461 N.Y.S.2d 232, 237, 448 N.E.2d 86, 91 (1983). In *Murphy*, the court of appeals stated:

[U]nder New York law as it now stands, absent a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, an employer's right at any time to terminate an employment at will remains unimpaired.

*Id.*

The court noted, however, that an employment handbook might constitute an express limitation which would be given effect even though the employment contract was of indefinite duration. *Murphy*, 58 N.Y.2d at 304–305, 461 N.Y.S.2d at 237, 448 N.E.2d at 91. Whether a handbook could constitute such an express limitation depended, the court continued, upon the ability of the plaintiff to make the "appropriate evidentiary showing" required by *Weiner v. McGraw-Hill, Inc.*, 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982). *Id.*

*Weiner* rests upon equitable principles of estoppel and includes the following elements: (1) Weiner was induced to leave his prior employer with the assurance that

McGraw-Hill would not discharge him without cause; (2) the employment application referred to the personnel handbook, which included the assurance that discharge would be for cause; (3) Weiner rejected other offers of employment in reliance on the assurance; and (4) Weiner alleged that he had been instructed not to dismiss his own subordinates except in strict compliance with the handbook. *Weiner*, 457 N.Y. S.2d at 197, 443 N.E.2d at 445.

■ These four factors are largely absent from this case. Appellants have failed to allege any reliance, either in joining TWA or in rejecting other offers, on the limitations on discharge in the handbook. They have failed to allege that the policies of the handbook were explicitly incorporated in their applications or contracts. Indeed, the employment application expressly provided that employment was to be at will.

### III

California courts, motivated by the idea that the right to job security is necessary to ensure social stability, have greatly circumscribed the traditional notion of at-will employment. A right of action for wrongful termination has emerged from sources in both contract and tort law. *See Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 174–76, 164 Cal.Rptr. 839, 843, 610 P.2d 1330, 1334–35 (1980); *Shapiro v. Wells Fargo Realty Advisors*, 152 Cal.App.3d 467, 199 Cal.Rptr. 613 (1984).

■ In a case such as this, California courts have recognized two theories of recovery. First, the employer's conduct, often as evidenced by an employment manual, may give rise "to an implied promise that it would not act arbitrarily in dealing with its employees." *Pugh v. See's Candies, Inc.*, 116 Cal.App.3d 311, 329, 171 Cal.Rptr. 917, 927 (1981). *See Shapiro*, 152 Cal.App.3d at 480, 199 Cal.Rptr. at 622. The emphasis in this approach is, in traditional contract terms, *see Pugh*, 116 Cal. App.3d at 329, 171 Cal.Rptr. at 927, on whether the parties have reached an im-

plied meeting of the minds regarding certain aspects of their employment relationship. Here, however, the MP & P cannot be viewed as a manifestation of the intent of the parties. The employment application completed by the appellants expressly states that employment is terminable at will. This term contradicts the notion that the parties agreed to limitations upon at-will employment. As a California appellate court recently held in a case where an employee, who had signed a stock option agreement stating that employment was at will, sought to imply a contract for continuing employment, "[t]here cannot be a valid express contract and an implied contract each embracing the same subject, but requiring different results." *Shapiro*, 152 Cal.App.3d at 482, 199 Cal.Rptr. at 622. *See Balzer/Wolf Associates, Inc. v. Parlex Corp.*, 753 F.2d 771, 775 (9th Cir.1985); *Brimmer v. Union Oil of California*, 81 F.2d 437, 440 (10th Cir.), *cert. denied*, 298 U.S. 668, 56 S.Ct. 833, 80 L.Ed. 1391 (1936); *Wal-Noon Corp. v. Hill*, 45 Cal.App.3d 605, 613, 119 Cal.Rptr. 646, 650–51 (1975). An implied contract to allow the appellants to displace into other management positions is similarly precluded here.

■ A second theory of recovery, sounding in both contract and tort, recognized by California courts is predicated upon an implied covenant of good faith and fair dealing. *Cleary v. American Airlines, Inc.*, 111 Cal.App.3d 443, 455, 168 Cal.Rptr. 722, 729 (1980). The *Cleary* court held that "the longevity of the employee's service, together with the expressed policy of the employer [of adjudicating disputes], operate as a form of estoppel, precluding any discharge of such an employee by the employer without good cause." *Cleary*, 111 Cal.App.3d at 456, 168 Cal.Rptr. at 729. *See Shapiro*, 152 Cal. App.3d at 478–79, 199 Cal.Rptr. at 619.

Existing management procedures in conjunction with longevity of employment, therefore, preclude discharge without good cause. They create an environment where

societal standards of good faith and fair dealing will be given effect. The existing management procedures, such as a right to displace, do not, however, become themselves standards of good faith and fair dealing. Indeed, to treat these procedures in such a manner would contradict the restrictions upon implied contractual terms imposed by cases such as *Shapiro*.

We are cited to no California authority to the effect that a right to displace is a requisite of good faith. Further, the evidence indicates that appellants were furloughed as part of a general reduction in TWA's management work force necessitated by the company's economic circumstances and resulting in the abolishment of their positions. In contrast to the situation in *Cleary*, appellants were not, therefore, dismissed without good cause.

We conclude that appellants cannot prevail under either New York or California law.

Judgment affirmed.

NORRIS, Circuit Judge, dissenting:

I dissent because I cannot distinguish this case in any meaningful way from *Cleary v. American Airlines, Inc.*, 111 Cal.App.3d 443, 168 Cal.Rptr. 722 (1980).[1] The issue here is not whether TWA can reduce its workforce for economic reasons but whether it can effect that reduction without complying with its own established bumping policy.

In *Cleary*, the California Court of Appeal considered under what circumstances an at-will, long-term employee could recover on a theory of wrongful discharge. *Id.* at 446, 168 Cal.Rptr. at 724. The court held that although the plaintiff was an at-will

employee, he stated a cause of action because of two alleged facts: (1) he was a long-term employee of eighteen years, and (2) the employer adopted a written regulation, which expressed the employer's policy and procedure with respect to employee grievances and discharge. *Id.* at 447–48, 168 Cal.Rptr. at 724. The court concluded that longevity of employment, "together with the expressed policy of the employer, operate as a form of *estoppel*, precluding any discharge of such an employee by the employer without good cause." *Id.* at 456, 168 Cal.Rptr. at 729 (emphasis added).

I read *Cleary* as standing for the proposition that when an employer promulgates an express policy relating to termination, an at-will, long-term employee may not be arbitrarily terminated in disregard of the policy. As the *Cleary* court explained, the existence of an express policy "compels the conclusion that this employer had recognized its responsibility to engage in good faith and fair dealing rather than in arbitrary conduct with respect to *all* of its employees." *Id.* at 455, 168 Cal.Rptr. at 729.

Here we also have at-will, long-term employees. We also have the critical fact that the employer adopted a policy and practice relating to the termination of at-will employees, specifically that the employees would not be terminated as part of a reduction in the work force without first being given an opportunity to displace junior employees in other management positions for which they were qualified. Here, as in *Cleary*, the employer allegedly terminated plaintiffs in disregard of its policy, acting without any apparent reason and without notice of its intention to abandon the policy. I believe it is arguable that in this sense

---

**1.** In order to find that appellants cannot recover under the implied covenant of good faith and fair dealing theory, we have to distinguish *Cleary*, not *Pugh v. See's Candies, Inc.*, 116 Cal. App.3d 311, 171 Cal.Rptr. 917 (1981), or *Shapiro v. Wells Fargo Realty Advisors*, 152 Cal.App.3d 467, 199 Cal.Rptr. 613 (1984). *Pugh* is precedent on appellants' implied contract theory, but not on the good faith and fair dealing theory.

The employment application here expressly stated that the employment was terminable at will. Thus, under *Pugh*, appellants' claim does not give rise to an implied contract. *Shapiro* is not controlling because the plaintiffs there were not long-term employees and they did not allege a failure by their employer to follow its own express employment termination policy and procedures.

TWA acted no less arbitrarily than American Airlines did in *Cleary* by discharging Cleary without following the expressed policy set forth in its written regulation.

The rationale of the California Court of Appeal in *Cleary* seems to be that if an employer adopts a policy limiting its freedom of action to terminate at-will, long-term employees, it may not act arbitrarily in disregarding that policy. Significantly, the *Cleary* court not only uses the word "arbitrary," *id.* at 455, 168 Cal.Rptr. at 729, but also uses the phrase "[the adoption of] the expressed policy of the employer, operate[s] as a form of *estoppel....*" *Id.* at 456, 168 Cal.Rptr. at 729 (emphasis added). Thus, there seems to be a recognition that an employer should anticipate that even at-will employees may continue their employment relationship in reliance upon the employer's stated policies.

I recognize that in our case the TWA policy manual containing the bumping policy also contained a disclaimer that is arguably designed to preclude employees from relying upon the policy. It is not clear from the *Cleary* opinion whether the express policy there contained a similar disclaimer. I have difficulty believing, given the reasoning of the *Cleary* court, that such a disclaimer would be held to nullify the element of employee reliance on an explicit policy in continuing his or her long-term employment relationship.

In sum, because I have difficulty distinguishing *Cleary* from this case, I would hold that we should reverse the grant of summary judgment.[2] Although the California courts have not yet fully developed the contours of the newly emerging law in this area, such as how much notice or cause is necessary, *Cleary* seems to be authority at least for the proposition that an employer cannot change the rules for long-term employees without any notice or cause.

**2.** Under my analysis, of course, it would be necessary to reach the choice of law issue which the majority finds it unnecessary to reach.