[No. B037184. Second Dist., Div. Three. Aug. 7, 1989.]

H. WILLIAM WILKERSON, Plaintiff and Appellant, v.
WELLS FARGO BANK, N. A., Defendant and Respondent.

COUNSEL

Kerry M. Kinney for Plaintiff and Appellant.

Brobeck, Phleger & Harrison, John J. Wasilczyk, Earle Miller and Leslie R. Brown for Defendant and Respondent.

OPINION

KLEIN, P. J.—Plaintiff and appellant H. William Wilkerson (Wilkerson) appeals from a judgment following a grant of summary judgment in favor of his former employer, defendant and respondent Wells Fargo Bank, N. A. (Wells Fargo or the Bank).

The at-will provisions set forth in the Bank's employee handbook and its service and operations manual (SOM) do not establish Wilkerson's employment was at-will as a matter of law, in the face of contrary evidence that Bank policy was to terminate only for good cause.

The Bank's alleged good faith belief it had good cause does not dispose of Wilkerson's claims.

Triable issues of material fact exist as to whether (1) there was an implied-in-fact contract to terminate only for good cause and (2) whether Wilkerson's discharge was consistent with Bank policies and supported by good cause. The judgment therefore is reversed in part and affirmed in part.

## Factual & Procedural Background

On December 9, 1982, a collection letter from an attorney, addressed to Wilkerson, was received at the Bank's Santa Monica branch. The letter stated Wilkerson had been a guest at the Colonial Inn in La Jolla on the night of September 22, 1982, and Wilkerson had assured the hotel manager that one John Valardi "would have the necessary funds deposited into his account with [the] bank to pay his bill." The collection letter held Wilkerson, as the registered guest, personally liable for the $95.40 balance. Wilkerson conceded Valardi was a Bank customer and that he, Wilkerson, had attended a play in La Jolla on the night of September 22, 1982, and had been investigating the possibility of Valardi's company securing a loan. The Bank's code of corporate responsibility and ethics prohibited employees from accepting gifts from customers or potential customers of greater than "nominal value (generally no more than $50.00)."

Wells Fargo thereafter undertook an investigation and learned of another irregularity involving Wilkerson and another bank customer, Sandra Turner (Turner).

In early September 1982, Turner came into the Santa Monica branch and advised Wilkerson she wished to deposit several checks which would cure her overdraft situation at the time and also enable her to pay Wilkerson $300 which she owed him in connection with a personal educational loan. Wilkerson accepted two checks from Turner in the amount of $150 each and negotiated them.

The following day, September 11, 1982, Wilkerson approved a $77.23 overdraft on Turner's account, which overdraft had been caused by the two $150 checks and bank fees. Bank policy prohibits employees from personally benefiting from transactions or making a loan to themselves.

According to Wilkerson's declaration, at the time he approved the $77.23 overdraft, he did not believe the overdraft was caused by the checks paid to him, and he did not understand that approval of the overdraft was in essence an unsecured loan to himself. Wilkerson characterized the Turner incident as an unintentional violation of Bank policy which did not constitute good cause for termination.

According to the Bank, however, approving a particular overdraft for one's own benefit is a nonperformance related issue; only performance-related deficiencies would first result in a written warning. The SOM provided that certain grounds, including dishonesty and violation of the Code of Corporate Responsibility and Ethics, constitute grounds for immediate

termination without warning. The Bank considered the Turner transactions to be a reportable irregularity and reported Wilkerson's actions to the FBI and the Regional Administrator of National Banks. The Turner matter was the Bank's stated justification for terminating Wilkerson on January 6, 1983.

On October 15, 1987, Wilkerson filed a second amended complaint alleging wrongful discharge by Wells Fargo, setting forth 10 causes of action, 4 of which are in issue on appeal and summarized below.

In his first cause of action for wrongful discharge, Wilkerson plead in substance: On June 1, 1979, pursuant to an oral contract, he was hired by Wells Fargo for the position of loan officer. Under said contract, which was modified by certain policies, practices and assurances, the employment was to continue so long as Wilkerson performed satisfactorily, and discharge would be only for good cause proven in accordance with the Bank's policies and practices. Wilkerson's expectation of continued employment was based on, inter alia, exemplary performance reviews, success in developing and maintaining customer relations, and his elevations to assistant manager and then deposit team leader at the Bank's Santa Monica branch. Despite Wilkerson's satisfactory performance, during the period between December 8, 1982, and January 6, 1983, he was removed from the Santa Monica branch without good cause, denied the opportunity to be heard in the course of the ensuing investigation, and finally discharged without good cause on January 6, 1983.

In the fourth cause of action for breach of the implied covenant of good faith and fair dealing, Wilkerson alleged the Bank's conduct was in bad faith and for the purpose of depriving him of his rights and benefits under the employment relationship.

The fifth cause of action alleged wrongful discharge in violation of California public policy ensuring the privacy of its residents. Wilkerson pleaded the Bank violated said policy by failing to safeguard information regarding his termination.

The 10th cause of action alleged the Bank acted with fraud, oppression, malice and conscious disregard of Wilkerson's rights and sought punitive damages.

The Bank answered the complaint, denied the allegations, and asserted, inter alia, Wilkerson's employment was terminable at-will and, in any event, he was terminated for cause.

On April 14, 1989, Wells Fargo filed a motion for summary judgment or summary adjudication of issues, supported by declarations of its officers and by a separate statement of undisputed material facts. The Bank maintained Wilkerson's employment was at-will and, in the alternative, were the trial court to determine Wilkerson was not employed at-will, the undisputed facts established Wilkerson was terminated for misconduct.

Wilkerson opposed Wells Fargo's motion, contending the Bank's stated reason for terminating him was pretextual. Wilkerson maintained in reality his termination was a ratification by the Bank of the racial prejudice of Robert Sanford (Sanford), manager of the Bank's Santa Monica branch. Wilkerson's opposition papers were supported by his own declaration, a declaration of former Bank Executive Vice-President John H. Griffith (Griffith), and a responsive separate statement of undisputed material facts.

The matter was argued May 12, 1988. The trial court found there existed no triable issues of fact and Wells Fargo was entitled to judgment as a matter of law. Judgment was entered July 11, 1988, and Wilkerson appealed.

## CONTENTIONS

Wilkerson contends (1) the grant of summary judgment as to the first, fourth, fifth and tenth causes of action was error because material issues of fact exist with respect to his wrongful discharge claims; and (2) the trial court improperly excluded portions of Griffith's declaration.[1]

## DISCUSSION

1. *Standard of appellate review.*

■ Summary judgment is appropriate only if no material fact issue exists or where the record establishes as a matter of law that a cause of action asserted against a party cannot prevail. (*Avila* v. *Standard Oil Co.* (1985) 167 Cal.App.3d 441, 446 [213 Cal.Rptr. 314].)

■ A motion for summary judgment is addressed to the sound discretion of the trial court. (*Leo F. Piazza Paving Co.* v. *Foundation Constructors, Inc.* (1981) 128 Cal.App.3d 583, 589 [177 Cal.Rptr. 268].) However, be-

---

[1] As set forth above, the fifth cause of action alleges wrongful discharge in violation of the public policy protecting individual privacy. However, the public policy argument in Wilkerson's brief is based on the policy against racial discrimination. For purposes of this discussion, we assume Wilkerson would attempt to amend his pleading to allege wrongful termination in violation of the latter public policy.

cause the determination of the trial court is one of law based upon the papers submitted, the reviewing court must make its own independent determination of their construction and effect. (*Larsen* v. *Johannes* (1970) 7 Cal.App.3d 491, 496 [86 Cal.Rptr. 744].)

2. *Triable issue as to whether Wilkerson's employment was at will.*

Both the Bank's employee handbook and the voluminous SOM provided that employment with the Bank was for no specified term or length and could be terminated with or without cause by either party.

In resisting summary judgment, Wilkerson offered the deposition testimony of two Bank officers, Cha Sanders and Ronald Schneider, and the declaration of Griffith, a former executive vice-president of the Bank, each of whom stated the Bank had a policy to terminate employees only for good cause.

Based thereon, Wilkerson contends a triable issue exists as to whether the Bank's unwritten policy to discharge only for good cause gave rise to an implied-in-fact promise notwithstanding the at-will provisions contained in the SOM and employee handbook.[2]

a. *General principles.*

Labor Code section 2922 provides in relevant part: "An employment, having no specified term, may be terminated at the will of either party on notice to the other."

The statute creates a presumption which may be superseded by a contract, express or implied, limiting the employer's right to discharge the employee. (*Foley* v. *Interactive Data Corp., supra*, 47 Cal.3d at p. 665.) In the employment context, factors apart from consideration and express terms may be used to ascertain the existence and content of an employment agreement, including " 'the personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged.' " (*Foley, supra,* 47 Cal.3d at

---

[2] Although Wilkerson describes his cause of action as one for breach of an oral contract, where a plaintiff "does not allege explicit words by which the parties agreed that he would not be terminated without good cause [but] [i]nstead . . . alleges that a course of conduct, including various oral representations, created a reasonable expectation to that effect . . . [the] cause of action is more properly described as one for breach of an implied-in-fact contract. [Fn. omitted.]" (*Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 675 [254 Cal.Rptr. 211, 765 P.2d 373].)

p. 680.) Absent any contract, however, the employment is at will, and the employee can be fired with or without good cause, subject only to limits imposed by public policy. (*Id.,* at p. 665.)[3]

 b. *Handbook and SOM not tantamount to express agreement that employment was at will.*

 The Bank argues the express at-will provisions of the employee handbook and SOM preclude a contrary implied promise as a matter of law.

The Bank relies, inter alia, on *Shapiro* v. *Wells Fargo Realty Advisors* (1984) 152 Cal.App.3d 467, 473 [199 Cal.Rptr. 613], wherein a discharged employee alleged breach of an implied-in-fact contract to terminate only for good cause. The trial court took judicial notice of an employee stock option agreement signed by the plaintiff, which expressly defined the employment relationship as being at will, and sustained the employer's demurrer without leave to amend. (*Ibid.*)

The *Shapiro* court affirmed, stating "[t]here cannot be a valid express contract and an implied contract, each embracing the same subject, but requiring different results. [Citations.] Therefore, Shapiro's allegations of an implied-in-fact contract for continuing employment and benefits cannot rebut his status as an at-will employee." (*Shapiro* v. *Wells Fargo Realty Advisors, supra,* 152 Cal.App.3d at p. 482, criticized on other grounds in *Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d at p. 688, and disagreed with on other grounds in *Dabbs* v. *Cardiopulmonary Management Services* (1987) 188 Cal.App.3d 1437, 1443 [234 Cal.Rptr. 129].)

*Shapiro* plainly is distinguishable as it involved an express at-will provision in an agreement signed by the employee. (*Shapiro, supra,* 152 Cal.App.3d at p. 473, fn. 1.) Further, both of the wrongful termination cases cited by *Shapiro* for the proposition an implied-in-fact contract cannot rebut a contrary written agreement (*id.,* at p. 482), involve express at-will clauses in agreements signed by the employee. In *Crossen* v. *Foremost-McKesson, Inc.* (N.D.Cal. 1982) 537 F.Supp. 1076, 1077, the employee signed a contract which provided his "service . . . may be terminated at any time on 60 days' written notice by either party." Similarly, in *Crain* v. *Burroughs Corp.* (C.D.Cal. 1983) 560 F.Supp. 849, 851, the employee signed a sales representative agreement stating the employer had the sole discretion to determine the duration of the employment.

---

[3] *Foley* is fully retroactive and applies to all cases which were not final as of January 30, 1989. (*Newman* v. *Emerson Radio Corp.* (1989) 48 Cal.3d 973, 993 [258 Cal.Rptr. 592, 772 P.2d 1059].)

In addition, all the cases cited by the Bank in its argument the employee handbook and SOM preclude an implied-in-fact promise to terminate only for cause, similarly involve express signed at-will agreements. In *Baker* v. *Kaiser Aluminum and Chemical Corp.* (N.D.Cal. 1984) 608 F.Supp. 1315, 1320, the plaintiff signed an agreement providing the employment was to continue " 'for such a length of time as shall be mutually agreeable to Employer and Employee.' " In *Gianaculas* v. *Trans World Airlines, Inc.* (9th Cir. 1985) 761 F.2d 1391, 1392-1393, each employee completed an application which stated " '[i]f given employment, I hereby agree that such employment may be terminated by the company at any time . . . .' " In *Malmstrom* v. *Kaiser Aluminum & Chemical Corp.* (1986) 187 Cal.App.3d 299, 309 [231 Cal.Rptr. 820], the employee signed a one page agreement which read that the employment would continue " 'for such a length of time as shall be mutually agreeable . . . .' " Lastly, in *Gerdlund* v. *Electronic Dispensers International* (1987) 190 Cal.App.3d 263, 267-268 [235 Cal.Rptr. 279], the plaintiffs signed a sales representative agreement which provided notice of termination could be given by either party at any time and for any reason.[4]

■ The above cases are consistent with the parol evidence rule, which generally prohibits the introduction of any extrinsic evidence to vary or contradict the terms of an integrated written instrument. (*Gerdlund* v. *Electronic Dispensers International, supra,* 190 Cal.App.3d at p. 270.) The parol evidence rule "is based upon the premise that the written instrument *is* the agreement of the parties." (*Ibid.*)

■ Further, it is recognized that where parties have freely, fairly and voluntarily entered into a bargain, it would be inequitable to imply a different liability and to withdraw from one party benefits to which he or she is entitled under the contract. (*Wal-Noon Corp.* v. *Hill* (1975) 45 Cal.App.3d 605, 613 [119 Cal.Rptr. 646].)

■ Here, the Bank and Wilkerson did not reduce their employment relationship to an integrated writing. Thus, rather than being controlling, the employee handbook and SOM are factors to be considered by the jury in determining the existence and content of the employment agreement. (*Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d at p. 680.) The personnel policies

---

[4]See also *Anderson* v. *Savin Corp.* (1988) 206 Cal.App.3d 356, 364, footnote 2 [254 Cal.Rptr. 627], holding an at-will employment letter was a fully integrated document, precluding an implied-in-fact contract for continuing employment. Compare *McLain* v. *Great American Ins. Companies* (1989) 208 Cal.App.3d 1476, 1485, 1487 [256 Cal.Rptr. 863], holding an employment application form containing an at-will clause was not an integrated document, and that substantial evidence established an implied contract that an employee could only be terminated for cause.

and practices of the Bank and other relevant factors also are to be considered in resolving whether the parties had "enforceable expectations concerning either the term of employment or the grounds or manner of termination[.]" (*Ibid.*)

3. *Wilkerson's termination not racially motivated in violation of public policy.*

■ The Bank maintained Wilkerson was terminated for misconduct based on the Turner matter, which is discussed, *ante*. In opposition, Wilkerson contended the Bank's stated reason was pretextual and he was terminated "in an act of ratification of the racial discrimination which led to [his] transfer out of the Santa Monica Branch."

Issue No. 6 on the Bank's motion for summary judgment submitted its "decision to terminate [Wilkerson] was not based on any discriminatory motive, nor was it the result of unlawful racial discrimination . . . ."

With respect to issue No. 6, the following facts were undisputed: Wilkerson's claim of discriminatory conduct by the Bank was based on certain comments allegedly made by Wilkerson's manager at the Santa Monica branch, Robert Sanford (Sanford). The alleged comments include references to Wilkerson's daughter being a Black Little Orphan Annie in a school play; remarks regarding not " 'goofing up' " with a Black customer; responding to Wilkerson's belief a Black customer had engaged in kiting by remarking Blacks have a tendency to engage in that kind of thing; and observations that Wilkerson had pretty White women as customers.

The only disputed fact on issue No. 6 is fact No. 44. Wilkerson disputed the Bank's assertion that Sanford had no involvement in the determination to terminate him.

To support its position, the Bank referred to deposition testimony wherein Sanford stated he had no input into the decision to terminate Wilkerson and did not even know where Wilkerson was working when he was terminated on January 6, 1983.[5]

Wilkerson disputed this fact by citing paragraphs 5 and 6 of his own declaration. Paragraphs 5 and 6, however, did not controvert the Bank's evidence on this point but merely reiterated Sanford's alleged misconduct at the Santa Monica branch. While Sanford's alleged acts were odious, the evidence relied upon by Wilkerson did not raise a triable issue as to whether

---

[5] Wilkerson was transferred out of the Santa Monica branch on November 8, 1982.

his *termination* was racially motivated. Accordingly, Wilkerson's cause of action for wrongful discharge in violation of public policy and his punitive damage claim both fail.

While Wilkerson's claim of a pretextual firing is unsupported by the record, it remains to be determined whether the reason advanced by the Bank constitutes good cause.

*4. Triable issue remains as to whether Wilkerson's handling of the Turner matter gave the Bank good cause for termination.*

As explained in section 5, *post,* the trial court prejudicially erred in excluding crucial portions of Griffith's declaration. We conclude the declaration was sufficient to raise triable issues of material fact as to whether the Turner matter, the reason advanced by the Bank for its discharge of Wilkerson, constituted good cause for termination, and whether the Bank complied with its own policies and acted in good faith.

Griffith's declaration provided in substance: Griffith was employed by the Bank for 37 years and left the Bank in February 1983 as executive vice-president. During the course of his employment, he had the opportunity to become familiar with Bank policies relating to the employment and termination of Bank officers. The Bank's policy was to terminate officers only for good cause. Whether employee misconduct justified immediate termination depended upon the extent of the problem. Generally, violation of the Bank's conflict of interest rules would have been grounds for immediate termination only if the violation were gross *and* willful. Even a gross abuse of lending authority would result in termination only where there was a very substantial loss and no hope for improvement on the part of the officer. Generally, alternatives such as removal of authority or transfer were used instead of termination. Griffith understood Wilkerson was terminated for purportedly negotiating checks from a Bank customer to himself and on the next day, approving a $77 overdraft for his own benefit. In Griffith's opinion, such conduct was not of the type which would justify immediate termination and would not constitute good cause for termination. Instead, lesser alternatives could or should have been used.

Thus, while the Bank characterizes Wilkerson's handling of the Turner matter as a willful violation warranting immediate dismissal, its position is controverted by Griffith's statement that immediate termination would occur only if there were a gross violation resulting in a substantial loss. The declaration thus put in issue whether the Turner incident, even if true, amounted to good cause for termination and was consistent with Bank policy, or whether the reason advanced by the Bank was trivial and

capricious and not a fair or honest cause or reason. (*Pugh* v. *See's Candies, Inc.* (1988) 203 Cal.App.3d 743, 769-770 [250 Cal.Rptr. 195].)

a. *The Bank's defense that it acted in good faith applies only to claimed breach of implied covenant of good faith and fair dealing, not to breach of contract.*

The Bank urges even assuming the Turner incident does not amount to good cause for discharge, its asserted good faith belief that good cause existed bars Wilkerson's claims. This argument lacks merit because, as discussed above, Griffith's declaration put the Bank's good faith in issue.

The argument fails for the further reason that in contract law the belief of the breaching party does not determine whether a breach of the contract has occurred. Obviously, a defaulting borrower's good faith belief he or she has repaid a loan is not a defense to a lender's claim for payment. Similarly, an employer's subjective belief it possessed good cause does not dispose of a wrongfully discharged employee's claim for breach of contract. Such employee is entitled to recover for breach of contract notwithstanding the employer's state of mind.

Because an employer has wide latitude in making personnel decisions, the test for good cause is not whether the jurors would have fired the employee, but rather, whether the discharge was within the bounds of the employer's discretion, or instead, was trivial, capricious, unrelated to business needs or goals, or pretextual. (*Pugh* v. *See's Candies, Inc., supra,* 203 Cal.App.3d at pp. 767-770.) For instance, while the jurors themselves might not have fired Wilkerson for approving a $77 overdraft, the jury may conclude such reason was within the Bank's discretion and constituted good cause for termination.

However, an employer's belief is not a substitute for good cause. For that reason, the employer's broad latitude does not extend to being *factually* incorrect. If an employer claims the employee was discharged for specific misconduct, and the employee denies the charge, the question of whether the misconduct occurred is one of fact for the jury. (*Pugh* v. *See's Candies, Inc., supra,* 203 Cal.App.3d at p. 767.) For example, should the jury find Wilkerson did not knowingly approve the Turner overdraft, then the Bank would have erred in concluding Wilkerson's violation was willful; then, good cause for termination would be lacking, and the Bank would have breached the contract, irrespective of any good faith belief.[6]

---

[6]*Foley* established that absent a violation of public policy, wrongful discharge does not have consequences in tort. (*Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d at p. 663.)

In contrast, because the implied covenant of good faith and fair dealing requires the employer to act fairly and in good faith, an employer's honest though mistaken belief that legitimate business reasons provided good cause for discharge, will negate a claim it sought in bad faith to deprive the employee of the benefits of the contract. (*Pugh* v. *See's Candies, Inc., supra,* 203 Cal.App.3d at p. 770.)

5. *Trial court's exclusion of paragraphs 5 and 6 of Griffith's declaration was prejudicial error.*

Wilkerson obtained Griffith's declaration the night before the hearing on the summary judgment motion, and the declaration was submitted to the trial court on the morning of the hearing. At the hearing, the Bank's counsel moved to strike the declaration as untimely. The trial court stated it was inclined to grant a continuance and enable Wilkerson to submit the declaration. The Bank's counsel responded he preferred to have the declaration admitted that day rather than having the matter put over, and the hearing proceeded. Thus, the late filing of the declaration cannot support the sustaining of objections to portions thereof.

After the Bank's counsel withdrew the objection to the late filing of Griffith's declaration, he objected to paragraphs 5 and 6 thereof as irrelevant, without proper foundation, inadmissible opinion and conclusion of law. Paragraph 5 described generally the Bank's policy with respect to termination of officers for misconduct. Paragraph 6 opined Wilkerson's handling of the Turner overdraft did not constitute good cause for discharge, and some lesser measure would have been appropriate. The trial court struck those paragraphs for the reasons stated by counsel.

On appeal, Wilkerson contends the striking of paragraphs 5 and 6 was prejudicial error. The contention has merit.

The excluded evidence would have been most relevant to Wilkerson's claim his termination was without good cause and contrary to Bank policy. Griffith apparently was competent to testify regarding Bank personnel policies generally, based upon his personal knowledge of same. Further, Griffith appears to have been in a position to offer an expert opinion as to the application of those policies to this fact situation involving the Turner incident. Thus, Griffith's lack of personal knowledge regarding the matter was without import.

Accordingly, we see no need for an employer's subjective good faith belief to be dispositive of whether a contractual employee was terminated for good cause.

Because paragraphs 5 and 6 were admissible and were sufficient to create triable issues of material fact, their exclusion was prejudicial error.

## CONCLUSION

The at-will provisions contained in the Bank's employee handbook and operations manual do not establish Wilkerson's at-will status as a matter of law, in view of the Bank's unwritten policy to terminate only for cause. While Wilkerson's claim his termination was racially motivated is unfounded, it remains to be determined whether the Turner incident amounted to good cause.

The Bank's conclusions that Wilkerson's violation was willful and amounted to good cause do not dispose of Wilkerson's claims. It is for the jury to determine whether Wilkerson acted knowingly and whether, even assuming the violation were willful, it amounted to good cause.

Accordingly, triable issues of material fact remain as to (1) the existence of an implied-in-fact promise to terminate only for cause, and (2) whether Wilkerson's termination was supported by cause and was consistent with the Bank's policies and practices and with the implied covenant of good faith and fair dealing.

## DISPOSITION

The judgment is reversed as to the first and fourth causes of action only and otherwise is affirmed. Wilkerson to recover costs on appeal.

Danielson, J., and Croskey, J., concurred.

Respondent's petition for review by the Supreme Court was denied December 7, 1989.