Gus JOANOU; James Beeler, Plaintiffs–Appellants,

v.

The COCA–COLA COMPANY; Does I Through XXV, Defendants–Appellees.

Andy L. FISHER, Plaintiff–Appellant,

v.

The COCA–COLA COMPANY, Defendant–Appellee.

Nos. 92–55866, 92–55910.

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 6, 1993.*

Decided June 7, 1994.

* The panel unanimously finds this case suitable for decision without oral argument pursuant to Fed. R.App.P. 34(a) and 9th Cir.R. 34.4.

William H. Waysman, Los Angeles, CA, for plaintiffs-appellants.

W. Thomas Haynes, Atlanta, GA, for defendant-appellee.

Before FLETCHER, PREGERSON, and HALL, Circuit Judges.

Opinion by Judge HALL.

CYNTHIA HOLCOMB HALL, Circuit Judge:

In this appeal, plaintiffs raise a number of claims arising from their loss of employment and benefits when Coca–Cola sold a portion of its operations. The district court had jurisdiction pursuant to 28 U.S.C. §§ 1441(a) and 1332. This Court has jurisdiction under 28 U.S.C. § 1291. We affirm.

I

On January 31, 1989, The Foods Division of The Coca–Cola Company (Coca–Cola) sold its "coffee business" to Maryland Club Foods, Inc. (MCF). At that time, Gus Joanou, James Beeler and Andy L. Fisher (plaintiffs) were Coca–Cola employees who worked in the coffee business. After the sale, Coca–Cola leased plaintiffs' services to MCF for sixty days. At the end of the sixty days, on March 31, 1989, Coca–Cola terminated their employment. On April 1, plaintiffs commenced employment with MCF in positions substantially similar to those they had held while employed by Coca–Cola.

From May 14, 1982, until its revision on or about January 1, 1989, Coca–Cola's severance pay policy as stated in its Management Policy Guide (MPG) provided severance benefits for all regular employees not members of a collective bargaining unit except in the following situations:

(a) Voluntary resignation not initiated by the Company.

(b) Retirement[ ]—voluntary or involuntary if covered by any form of retirement annuity.

(c) Termination as a result of an Act of God, a national emergency, or revocation of the Company's license to do business.

(d) Insured long term disability coverage, death, or military leave.

(e) Termination resulting from an employee's request for a personal leave of absence or medical leave of absence.

(f) Dismiss[al] for cause.

On or about January 1, 1989, Coca–Cola amended the MPG severance policy, adding an additional exception for employees "[o]ffered comparable employment by a buyer of a business unit or assets of the Company." On February 20, 1989, Coca–Cola also promulgated a Coffee Business Severance Pay Plan which provided:

A Coffee Business Employee shall qualify for a [severance] benefit under … this Plan only if The Coca–Cola Company determines that

(a) his or her employment with The Coca–Cola Company will terminate as a result of the sale of the Coffee Business and

(b) the person who purchased the Coffee Business from The Coca–Cola Company

(1) failed to offer to employ such Coffee Business Employee, or

(2) offered to employ such Coffee Business Employee for a cash compensation package which The Coca–Cola Company determines (using such factors and assumptions as The Coca–Cola Company deems reasonable under the circumstances) is less than 90% of his or her weekly Pay and such Coffee Busi-

ness Employee thereafter declined to accept such offer.

Plaintiffs initiated separate suits in state court, asserting that Coca–Cola wrongfully modified its severance benefit plan to exclude them from its coverage, terminated them in violation of their implied-in-fact employment contracts and in breach of the covenant of good faith and fair dealing, and wrongfully denied them various pension and welfare benefits. Coca–Cola removed the actions to federal court. Plaintiffs now bring this consolidated appeal from the district court's final orders granting summary judgment for Coca–Cola.

## II

■ Plaintiffs challenge the district court's conclusion that the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461, does not constrain Coca–Cola's authority to amend its severance benefit plan.[1] Under ERISA, employee benefits are divided into two categories—"welfare" benefits and "retirement or pension" benefits. 29 U.S.C. § 1002(1)–(2). Severance benefit plans are welfare benefit plans subject to certain disclosure requirements and fiduciary responsibility standards, *see id.* §§ 1101–1114, 1021–1031, but exempt from the more stringent requirements of ERISA, such as its vesting, participation and funding requirements, *see id.* §§ 1051(1), 1081(a)(1). *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1352 (9th Cir.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985). While employers who choose to provide a severance plan assume certain fiduciary duties in *administering* it, they remain free to unilaterally *amend* or *eliminate* such plans without considering the employees' interests. *Sutton v. Weirton Steel Div. of Nat'l Steel Corp.*, 724 F.2d 406, 410 (4th Cir.1983), *cert. denied,* 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984); *see also Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1161 (3d Cir.1990) ("Virtually every circuit has rejected the proposition that ERISA's fiduciary duties at-

1. Plaintiffs have not argued that they are entitled to benefits under either the amended MPG or the new Coffee Business Plan.

tach to an employer's decision whether or not to amend an employee benefit plan."). In short, an employer does not owe its employees a fiduciary duty when it amends or abolishes a severance benefit plan. The district court was correct in granting summary judgment for Coca–Cola on this issue.

## III

Plaintiffs also bring common law claims for pension and welfare benefits. The district court properly held, however, that such claims are preempted by ERISA.

"'ERISA contains one of the broadest preemption clauses ever enacted by Congress.'" *Greany v. Western Farm Bureau Life Ins. Co.,* 973 F.2d 812, 817 (9th Cir.1992) (quotation omitted). Its provisions preempt "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Accordingly, claims relating to a benefit plan, whether founded on an alleged contract, *Nevill v. Shell Oil Co.,* 835 F.2d 209, 212 (9th Cir.1987), or based on tort theories, *Olson v. General Dynamics Corp.,* 960 F.2d 1418, 1423 (9th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 2968, 119 L.Ed.2d 588 (1992), are preempted by ERISA. Plaintiffs' claims seeking a certain level of benefits have a connection with and make reference to a benefit plan. The "inexorable conclusion," therefore, is that ERISA preempts these claims. *Olson,* 960 F.2d at 1421.

## IV

Plaintiffs additionally appeal the district court's grant of summary judgment on their claims under California law for breach of an implied-in-fact employment contract and violation of the covenant of good faith and fair dealing.[2] Plaintiffs allege two variations of an implied-in-fact contract. The first alleged contract promised them continued employment with Coca–Cola in some capacity, even if their current jobs were eliminated, so long as they performed well. We question wheth-

er California courts would recognize such an expansive contract, *see Clutterham v. Coachmen Indus., Inc.,* 169 Cal.App.3d 1223, 215 Cal.Rptr. 795, 797 (1985) ("Even when the implied promise of continued employment is found, it is only a promise not to terminate the employment without '. . . some good reasons . . .' or 'a fair and honest cause or reasons, regulated by good faith. . . .'"), but need not resolve this question because plaintiffs have presented no evidence to support such a contract with their former employer.

The alternative implied-in-fact contract alleged by plaintiffs guaranteed continued employment with Coca–Cola absent good cause for their termination. Coca–Cola claims that our decision in *Gianaculas v. Trans World Airlines, Inc.,* 761 F.2d 1391 (9th Cir.1985) (construing California law), resolves the issue of good cause in this case. In *Gianaculas,* each plaintiff had been "employed by Trans World Airlines (TWA) in management capacities" but due to "reductions in operations and staffing levels, their positions [were] abolished." *Gianaculas,* 761 F.2d at 1393. Plaintiffs declined non-management positions offered to them by TWA, were subsequently furloughed, and brought suit against TWA alleging breach of an employment agreement. *Id.* We concluded that plaintiffs were dismissed with good cause because "the evidence indicate[d] that [plaintiffs] were furloughed as part of a general reduction in TWA's management work force necessitated by the company's economic circumstances and resulting in the abolishment of their positions." *Id.* at 1395.

*Gianaculas* is not entirely apposite. Although economic circumstances necessitated the reduction in work force in that case, *Gianaculas,* 761 F.2d at 1395, Coca–Cola has not argued economic necessity. Nonetheless, Coca–Cola's reliance on *Gianaculas* is not entirely misplaced. The decision illustrates that "good cause" does not necessarily refer to the employee's poor performance. The proper inquiry to determine good cause will consider whether the discharge was within

2. Plaintiffs contend that California law applies to these claims. Coca–Cola agrees, except as to Beeler's claims, which it maintains are governed by Nevada law. It is not necessary for us to

resolve this choice of law dispute because even if we accept Beeler's choice we conclude that the district court's entry of summary judgment for Coca–Cola was proper.

the bounds of the employer's discretion or instead was trivial, capricious, unrelated to business needs or goals, or pretextual. *Wilkerson v. Wells Fargo Bank, Nat'l Ass'n,* 212 Cal.App.3d 1217, 261 Cal.Rptr. 185, 192 (1989). "Courts must take care not to interfere with the legitimate exercise of managerial discretion." *Clutterham,* 215 Cal.Rptr. at 797.

■ Coca–Cola made a "business judgment" to sell the coffee portion of its business, eliminating the need for plaintiffs' services. Plaintiffs have made no showing "that this reason was pretextual or that [defendant] acted in bad faith toward [them]." *Id.* Thus, even if we assume that plaintiffs created an issue of fact as to the existence of this implied-in-fact employment contract, Coca–Cola's divestiture of its coffee business constitutes the requisite "good cause."

■ Plaintiffs additionally claim that their discharge violates the covenant of good faith and fair dealing. "Under California law, every contract includes a covenant of good faith and fair dealing, which requires that neither party 'do anything which will deprive the other of the benefits of the agreement.'" *Kern v. Levolor Lorentzen, Inc.,* 899 F.2d 772, 777 (9th Cir.1990). "[A] breach can be shown 'where the employee can establish lengthy satisfactory service and that the employer acted contrary to its own policies in discharging the employee.'" *Id.* Plaintiffs presented no evidence that they were treated differently from other employees or that Coca–Cola acted contrary to its own policies. In fact, the MPG contemplated discharges for nondisciplinary reasons including but not limited to organizational changes.

The district court's grant of summary judgment in favor of The Coca–Cola Company is **AFFIRMED**.