52 F.3d 333
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Fred LEMNITZER and Ken Green, Plaintiffs-Appellants,
v.
PHILIPPINE AIRLINES, INC., Defendant-Appellee.
 No. 92-17073.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 15, 1995.
Decided April 18, 1995.
 
 IN PART, REVERSED AND REMANDED IN PART.
 Before: POOLE, CANBY, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Fred Lemnitzer and Ken Green appeal the district court's summary judgment in favor of their former employer Philippine Airlines, Inc. (PAL) in their employment discrimination action alleging national origin discrimination under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. Secs. 2000e to 2000e-17 and a pendent California state-law claim based upon PAL's policy of giving preference to Philippine citizens in job placement. Appellants contend that the district court erred by: (1) concluding that the Air Transport Agreement (ATA) between the United States and the Philippines allowed PAL to give preference to Philippine citizens when filling key positions in the company without implicating the national origin provisions of Title VII; (2) finding that Appellants failed to make a prima facie showing of national origin discrimination; and (3) finding that Appellants failed to present a genuine issue of material fact regarding their state-law breach of contract claim. We have jurisdiction under 28 U.S.C. Sec. 1291. We affirm in part, and reverse and remand in part.
 
 
 3
 * We must determine whether the district court properly determined that the ATA between the United States and the Philippines exempted PAL from the employment provisions of Title VII.
 
 
 4
 We review de novo the interpretation and application of the ATA. See United States v. Washington, 969 F.2d 752, 754 (9th Cir.1992) (reviewing de novo interpretation and application of a treaty), cert. denied, 113 S.Ct. 1946 (1993).[1]
 
 
 5
 The literal language of a treaty should control its construction unless "application of the words of the treaty according to their obvious meaning effects a result inconsistent with the intent or expectations of its signatories." Maximov v. United States, 373 U.S. 49, 54 (1963); accord Sumitomo Shoji America, Inc. v. Avagliano, 457 U.S. 176, 180 (1982). We therefore must interpret the ATA in light of the circumstances and conditions at the time it was entered into. See Rocca v. Thompson, 223 U.S. 317, 331-32 (1912).
 
 Here, the ATA provides in relevant part:
 
 6
 (1) The airline or airlines of one Party may, subject to the nondiscriminatory requirements of domestic laws and regulations of the other Party, establish offices in the territory of the other Party for the promotion and sale of air transportation.
 
 
 7
 (2) The designated airline or airlines of one Party may, in accordance with the laws and regulations of the other Party relating to entry, residence and employment, bring in and maintain in the territory of the other Party managerial, sales, technical, operational and other specialist staff required for the provision of air transportation.
 
 
 8
 (3) Each designated airline may perform its own ground handling in the territory of the other Party ("self-handling"). If the designated airline does not self-handle it may, subject to domestic laws and regulations of the other Party, select among competing agents for such services....
 
 
 9
 Air Transport Agreement, Sept. 16, 1982, U.S.-Phil., art. 8, para. 1-3, 34 U.S.T. 1624, 1647-48 (emphasis added).
 
 
 10
 The express language of the ATA provided that both parties would be subject to the domestic laws of the other. PAL therefore was allowed to bring its personnel into the United States subject to its domestic discrimination laws. The ATA did not suspend the application of Title VII, which was enacted eighteen years before the ATA. Absent any evidence showing that either the intent or the expectations of the signatories was inconsistent with the express language of the ATA, we conclude that PAL was not exempt from the provisions of Title VII. See, e.g., Airline Pil. Ass'n, Etc. v. Taca Intern. Airlines, 748 F.2d 965, 969 (5th Cir.1984) (holding that ATA between United States and El Salvador did not suspend application of the Railway Labor Act or prior judicial ruling prohibiting relocation of a pilot base in El Salvador), cert. denied, 471 U.S. 1100 (1985).
 
 II
 A.
 
 11
 Our conclusion that PAL agreed to be bound by Title VII does not mean that PAL could not place Philippine citizens in key managerial positions at its discretion. See Espinoza v. Farah Mfg. Co., 414 U.S. 86, 89 (1973) (Title VII does not prohibit discrimination based upon citizenship.) Title VII, however, prohibits discrimination based upon citizenship whenever it has the effect of discriminating on the basis of national origin. Id. at 92. We therefore must determine whether the Appellants raised any genuine issues of material fact regarding their national origin discrimination claim.
 
 B.
 
 12
 We review de novo a district court's grant of summary judgment. Lindahl v. Air France, 930 F.2d 1434, 1436 (9th Cir.1991). Title VII prohibits an employer from discriminating against any individual on the basis of national origin when making employment decisions. 42 U.S.C. Sec. 2000e-2(a)(1).
 
 
 13
 When the plaintiffs establish a prima facie case of employment discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the decision. Lindahl, 930 F.2d at 1437. If the employer articulates a legitimate, nondiscriminatory reason, the plaintiffs must raise a genuine factual issue as to whether the proffered reason was a pretext for discrimination. Id.; see also Foster v. Arcata Associates Inc., 772 F.2d 1453, 1461-62 (9th Cir.1985), cert. denied, 475 U.S. 1048 (1986). The plaintiffs "must produce specific facts either directly evidencing a discriminatory motive or showing that the employer's explanation is not credible." Lindahl, 938 F.2d at 1438.
 
 
 14
 Here, we assume without deciding that the Appellants established a prima facie case of employment discrimination regarding their discharge from PAL. Therefore, we must determine whether PAL articulated a legitimate, nondiscriminatory reason for their discharge.
 
 
 15
 PAL articulated a neutral reason of economic necessity for the discharges. It is undisputed that, due to economic difficulties, PAL closed all ten of its U.S. district sales offices located outside California and Hawaii, and the Tours and Charters department in San Francisco. This move resulted in the lay off of nine managers: four non-Filipino Americans (including the Appellants), two Filipino citizens, and three Filipino Americans. The two Filipino managers were repatriated to the Philippines and placed in new positions. The Appellants may not challenge PAL's decision to prefer its own citizens. See Espinoza, 414 U.S. at 89. The remaining seven managers were terminated. We conclude that PAL met its burden of articulating legitimate, nondiscriminatory reasons for terminating the remaining seven managers. See Foster, 772 F.2d at 1461-62.
 
 
 16
 The burden then shifted to the Appellants to demonstrate that PAL's explanation was a mere pretext for discrimination. This they have failed to do. We have carefully reviewed the record and conclude that the Appellants failed to produce evidence from which we could infer that PAL's reason for their discharge was pretextual. See id. at 1462-63; see also Forsberg v. Pacific Northwest Bell Tel. Co., 840 F.2d 1409, 1419 (9th Cir.1988) ("purely conclusory allegations of alleged discrimination, with no concrete, relevant particulars, will not bar summary judgment").
 
 
 17
 Accordingly, the district court did not err by concluding that the Appellants failed to demonstrate that PAL's explanation was pretextual and properly granted summary judgment for PAL on the Title VII claim.
 
 III
 
 18
 Finally, Appellants allege breach of employment contract because they were not allowed to "bump" junior employees pursuant to section 26.01 of the Personnel Policies and Procedures Manual.[2] PAL counters that the bumping policy did not apply to managers, and that, even if it did, good cause existed for the Appellants' termination. Concluding that no triable issues of fact existed regarding the applicability of the bumping policy, the district court granted summary judgment for PAL. We conclude that the district court erred.
 
 
 19
 "Under California law, a personnel policy of an employer may become part of the employment contract if the parties so intended, and the trier of fact may take into account an employee's reasonable reliance on the policy in determining whether such a mutual intent exists. Foley v. Interactive Data Corp., 765 P.2d 373, 388 (Cal.1988); see also Burton v. Security Pacific Nat'l Bank, 197 Cal.App.3d 972, 979 (1988) ("Personnel policies can become part of the contractual guarantee if the parties mutually intended to create a contract that such rules are to be followed."). Such policies should be considered in determining whether employees have "enforceable expectations concerning either the term of employment or the grounds or manner of termination." Foley, 765 P.2d at 387; accord Wilkerson v. Wells Fargo Bank, 212 Cal.App.3d 1217, 1228 (1989).
 
 
 20
 Here, the Appellants offered declarations indicating that they understood the "bumping" provision applied to them, and that they relied upon it. Appellants also offered general declarations by other PAL managers stating that the "bumping" provision applied to all employees. PAL countered with declarations by numerous managers that such a provision did not apply to managers.
 
 
 21
 These conflicting declarations create a triable issue of fact regarding whether Appellants reasonably relied on section 26.01. See Wilkerson, 212 Cal.App.3d at 1229-30. Assuming section 26.01 applied to the Appellants, another factual dispute exists regarding Appellants' qualifications for positions available under this provision. The record does not support a finding as a matter of law that the Appellants were or were not qualified for particular positions.
 
 
 22
 Accordingly, we reverse the district court's grant of summary judgment for PAL on the breach of contract claim and remand the case for trial on this claim.
 
 
 23
 AFFIRMED in part, and REVERSED and REMANDED in part.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We note that the term "treaty" also encompasses executive agreements such as the ATA. See Weinberger v. Rossi, 456 U.S. 25, 36 (1982) (holding that term "treaty" also extends to executive agreements)
 
 
 [2]
 Section 26.01 provides in relevant part:
 I. Policy
 The Company may lay off employees due to a reduction of workload or suspension of service.
 II. Regulations
 ...
 
 
 [4]
 A laid off employee may:
 --Accept lay-off at the point with a three (3)-year recall right to the same classification at the point form which laid off; or
 --May elect to displace other employees in the following sequence:
 a. First displace the most junior employee in his pay group at his point whose work he is qualified to perform.
 b. If unable to displace as in (a.) above, he may displace the most junior employee in his pay group on the system whose work he is qualified to perform, or he may displace the most junior employee at his point in each lower pay group whose work he is qualified to perform.
 c. If unable to displace as in (b.) above, he may displace the most junior employee in the system in each lower pay group whose work he is qualified to perform.