**Philip CORNELIO**

v.

**CONSOLIDATED RAIL CORP.**

Civ. No. B–82–759 (PCD).

United States District Court,
D. Connecticut.

May 2, 1984.

Morgan P. Ames, Roxanne Khazarian, Cummings & Lockwood, Stamford, Conn., for plaintiff.

Janet C. Hall, David C. Stohler, Robinson, Robinson & Cole, Hartford, Conn., for defendant.

## RULING ON DEFENDANT'S MOTION TO DISMISS

DORSEY, District Judge.

A knotty problem of statutory construction lies at the core of defendant's motion to dismiss and to strike count two of this action. For the reasons set forth below, the proper construction to be accorded the relevant provision of the Employment Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001, *et seq.*, requires that the motion to dismiss be granted. Plaintiff's action, which originated as a single count claim of negligence under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51, *et seq.*, shall proceed as such.

### Facts

Plaintiff's supplemental pleading dated October 24, 1984, alleges, in a second count, a cause of action for violations of rights secured to him purportedly under ERISA.

Defendant has moved to dismiss this ERISA count, as not within the jurisdiction of the court and as failing to state a claim upon which relief can be granted, and to strike all references in the supplemental complaint to defendant's "successor in interest."

As a further amended pleading elaborates on the statutory basis for the second count and drops the references to defendant's "successor in interest," the motion to strike is thus rendered moot.

On the basis of the language and purpose of ERISA, the Railroad Retirement Act of 1974 (1974 RRA), 45 U.S.C. §§ 231, *et seq.*, enacted October 16, 1974, and related legislation, however, defendant continues vigorously to press the motion to dismiss. ERISA, adopted on September 2, 1974, exempts "governmental plans" from its scope of coverage. 29 U.S.C. § 1003(b)(1). "Governmental plans" are statutorily defined to include "any plan to which the Railroad Retirement Act of 1935 or 1937 applies, and which is financed by contributions under the Act ...." 29 U.S.C. § 1002(32). The question is whether the exemption should encompass a plan, such as that in effect as to the plaintiff, under the 1974 RRA which codified, absorbed and superseded the Railroad Retirement Acts of 1935 (1935 RRA) and 1937 (1937 RRA), and the many amendments thereto over the years, preserving much of the prior acts.

Plaintiff contends that well-established canons of statutory construction and the relevant legislative histories compel the conclusion that the failure of ERISA, as enacted or as currently in force, to expressly include in its enumerated exemptions plans under the 1974 RRA, permits, as to such plans, recourse to ERISA, which recourse is unavailable to participants or beneficiaries of plans under the 1935 or 1937 RRAs. Defendant contends that the language, purpose, structure, and legislative history of ERISA and the RRAs compel the

finding that plans under the 1974 RRA are and must be excluded from the scope of coverage of ERISA, notwithstanding the failure of the statutory language to expressly so state. No reported case has been found dealing with this narrow issue.

*Discussion*

As noted in 2A Sutherland, *Statutory Construction* (4th ed., Sands rev. 1973) § 45.01, at 2, communication of ideas by means of language is rendered difficult by the imprecise character of the medium itself. Such is particularly true of written legislative enactments, reflecting the communicated ideas of a collectivity. As noted by Mr. Justice Frankfurter:

> Apart from the ambiguity inherent in its symbols, a statute suffers from dubieties. It is not an equation or a formula representing a clearly marked process, nor is it an expression of an individual thought to which is imparted the definiteness a single authorship can give. A statute is an instrument of government partaking of its practical purposes but also of its infirmities and limitations, of its awkward and groping efforts.

Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum.L.Rev. 527, 529 (1947).

These inherent "dubieties" in any legislative enactment explain the genesis of the various canons of construction and require a practical and sensitive application thereof. For, as noted by Professor Carl Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are to be Construed*, 3 Vanderbilt Law Review 395 (1950) (extracts *reprinted in* 4 Sutherland, *Statutory Construction* at 133), there are two opposing canons of statutory construction on almost every point. Thus:

> to make any canon take hold in a particular instance, the construction contended for must be sold, essentially, by means other than the use of the canon: the good sense of the situation and a *simple* construction of the available language to achieve that sense, *by tenable means, out of the statutory language.*

*Id.* at 136 (emphasis in original).

ERISA, whose legislative history is documented in over 500 pages of congressional reports reprinted at 1974 U.S.Code Cong. & Ad.News 4639, *et seq.*, was designed to overhaul the nation's private retirement system and provide real retirement income security for participants and beneficiaries of private retirement plans, H.R.Rep. No. 533, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 4639, *et seq.*, effectively subjecting to federal regulation all aspects of private pension plan operation and administration. Specifically, ERISA was designed to establish equitable standards of plan administration; mandate minimum standards of plan design with respect to the vesting of plan benefits; require minimum standards of fiscal responsibility by requiring amortization of unfunded liabilities; insure the vested portion of unfunded liabilities against the risk of premature plan termination; and promote renewed expansion of private retirement plans and increase the number of participants receiving private retirement benefits. *Id.* at 4640.

The standards, obligations and rights created by ERISA apply to participants and beneficiaries of private pension plans only. 29 U.S.C. § 1001(c). "Governmental" plans are exempt from ERISA coverage. 29 U.S.C. § 1003(b)(1). As noted above, "governmental plans" are defined to include plans under the 1935 and 1937 RRAs, 29 U.S.C. § 1002(32).

The 1935 RRA, formerly codified at 45 U.S.C. §§ 215–228, entitled "an Act to establish a retirement system for employees of carriers subject to the Interstate Commerce Act, and for other purposes," was amended by, incorporated in, and continued in effect with respect to individuals granted annuities prior to the enactment of, the 1937 RRA, formerly codified at 45 U.S.C. §§ 228a, *et seq.* One month after the passage of ERISA, the 1937 RRA was amended and revised by, and redesignated as, the Railroad Retirement Act of 1974, 45 U.S.C.

§§ 231, *et seq.* The definitional section of the 1974 RRA, 45 U.S.C. § 231, contains transitional provisions with respect to the 1935 and the 1937 RRAs, thus clearly continuing much of the earlier legislation and recodifying it to reflect the intervening amendments. A principal purpose of the 1974 RRA was to remedy the serious actuarial deficit then plaguing the Railroad Retirement System by coordinating benefits with the Social Security Act, so as to place the pension system for railroad employees on a sound financial basis. S.Rep. No. 1163, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 5702, *et seq.* Clearly the RRAs provide much of the protection that ERISA provided for private retirement plans. That the 1974 RRA was adopted six weeks after the enactment of ERISA without amending the reference in ERISA so as to exempt the 1974 RRA appears to be an oversight. The 1935 and 1937 acts do not now exist as pure and separate legislative acts. They were absorbed into the 1974 enactment and now constitute one statute. Thus, ERISA's exemptions, if taken literally, would exempt plans under statutes no longer existent but not plans under the only RRA now in the U.S.Code as such. To exempt plans in existence before the 1974 act and not those created thereafter, is to attribute to Congress a legislative nonsequitur without rational explanation.

The Railroad Revitalization and Regulatory Reform Act of 1976, 45 U.S.C. §§ 801, *et seq.*, created the defendant Conrail and provided for the transfer to Conrail of all rights and obligations arising from pension plans for employees of the transferred private carriers. Plaintiff had been employed by Conrail from 1974 until his alleged injury of 1982. The pension to which plaintiff alleges entitlement is fundamentally governmental in nature, in contradistinction to the private pensions addressed by ERISA. Pensions under the 1974 RRA, like those under the 1935 RRA and 1937 RRA before it, are not administered by the carrier, but rather by the Railroad Retirement Board. In nature, structure and administration, the 1974 RRA and ERISA operate essentially in parallel yet in two quite distinct spheres. Congressional enumeration of plans under the 1935 RRA and 1937 RRA as among the "governmental" plans expressly exempted from ERISA evidences a recognition that the government-railroad pension system was, as a result of the specific statutory provisions and the mechanism established for the administration and governance of the system, not vulnerable to the same problems from which private plans suffered. Thus, the need for regulation existed with respect to private pension plans and ERISA was enacted to meet that need. As no such need pertained to the RRA plans, they were exempt from ERISA. As RRA plans now exist under the 1974 RRA, the continued exemption of 1935 and 1937 RRA plans, and the absence of a specific exemption of plans under the 1974 RRA cannot reasonably be viewed as indicative of the intent of Congress to treat the several railroad retirement acts differently under ERISA. Instead, this matter merits the application of the canon that "[w]ords may be supplied in a statute in order to give it effect, or to avoid repugnancy." 2A Sutherland, *Statutory Construction,* § 47.38.

Plaintiff's argument against this seeming expansion of the enumerated "governmental plan" exemptions to include plans under the 1974 RRA unconvincingly asserts the applicability of a time-honored precept of statutory construction regarding congressional failure to amend ERISA after the 1974 RRA; to wit, as not expressly enumerated as exempt, the omission, not corrected since, must be deemed intended. This case pointedly attests to the observation that "legislative inaction [is] 'a weak reed upon which to lean' and a 'poor beacon' to follow in construing a statute." 2A Sutherland, *Statutory Construction* § 49.-10 at 261 (citations omitted).

The legislative history of ERISA makes no distinction between the various RRAs, noting that excluded from ERISA's coverage is any plan to which the Railroad Retirement Act (not otherwise specified) applies. H.R.Rep. No. 533, 93rd Cong., 2d

**494**

Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 4639, 4713; H.R.Conf.Rep. No. 1280, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 5038, 5043.

Finally, the reference to the availability, if applicable, of ERISA's Pension Benefit Guarantee Corporation, noted in Sen.Conf. Rep. No. 595, 94th Cong., 2d Sess., *reprinted in* 1976 U.S.Code Cong. & Ad.News 14, 225, for certain plans under the 1974 RRA can be reasonably understood to apply only to any supplemental private pension plans as authorized by the 1974 RRA, 45 U.S.C. § 231*o*, or its predecessors, not at issue here.

Accordingly, it is not an usurpation of legislative power to read ERISA as exempting plans under the 1974 RRA:

> [T]he better practice requires that a court enforce the legislative intent or evident statutory meaning where it is clearly manifested. The inclusion of words necessary to clear expression of intent or meaning is in aid of the legislative authority; the denial of the power to insert when the intent or meaning is clear is more nearly a usurpation of a legislative power for it results in destruction of the legislative purpose.

2A Sutherland, *Statutory Construction* § 47.38 at 173.

Professor Llewellyn's "good sense of the situation and a *simple* construction of the available language to achieve that sense, *by tenable means, out of the statutory language*" thus require the conclusion that no action involving a pension plan under the 1974 RRA can be brought under ERISA.

The court is thus without jurisdiction to entertain plaintiff's ERISA claim. The motion to dismiss is granted. By way of a Scheduling Order, all discovery shall be completed and further motions filed with respect to the FELA claim on or before June 4, 1984. Compliance with the accompanying Trial Preparation Order shall be filed in accordance with the times set therein.

SO ORDERED.