919 F.2d 1398
 136 L.R.R.M. (BNA) 2013, 117 Lab.Cas. P 10,441,
18 Fed.R.Serv.3d 963
 UNITED UNION OF ROOFERS, WATERPROOFERS, AND ALLIED TRADES
NO. 40, an unincorporated labor organization,
Plaintiff-Appellant,
v.
INSURANCE CORPORATION OF AMERICA, a corporation, Defendant-Appellee.
 No. 89-15068.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 13, 1990.
Decided Dec. 4, 1990.
 
 Roger A. Carnagey, Oakland, Cal., for plaintiff-appellant.
 Peter E. Romo, Jr. and Peter A. Smalbach, Adams, Duque & Hazeltine, San Francisco, Cal., for defendant-appellee.
 Appeal from the United States District Court for the Northern District of California.
 Before CHOY, TANG and BEEZER, Circuit Judges.
 CHOY, Circuit Judge:
 
 
 1
 The United Union of Roofers, Waterproofers, and Allied Trades, Local No. 40 (Union), appeals from the order of the district court dismissing its complaint against Insurance Corporation of America (ICA) and the court's refusal to file its first amended complaint. This appeal involves the questions whether the Union had standing to assert the rights of its members who sought payment of past wages from a payment bond issued by ICA, and whether the court should have accepted the Union's first amended complaint. We AFFIRM the district court's order denying the Union associational standing to assert the rights of its members, but we REVERSE and REMAND to the district court with instruction to consider whether the Union, by amending its complaint, can assert an independent right to standing.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 The facts are not in dispute, nor do the parties discuss them in detail. Apparently several members of the Union worked on a public project for A-Plus Roofing (A-Plus). As part of the requirements to obtain a contract on the project, A-Plus had to obtain a payment bond. ICA is the surety on the bond. A-Plus allegedly failed to pay in full the Union members' wages.
 
 
 3
 The Union brought suit in a federal court sitting in diversity. It sought enforcement of the payment bond, and specifically requested damages in the amount of its members' lost wages. It claimed to be suing as the "agent" of its members, or, alternatively, under the "associational representation" doctrine. ICA brought a motion to dismiss, arguing that the Union did not have standing to assert the rights of its members because it sought money damages that would require individual participation of some of its members.
 
 
 4
 On December 2, 1988, the district court granted the motion to dismiss. It held that federal standing law applied and that the Union had not met the third requirement for obtaining associational standing, namely, that the suit would not require the individual participation of any of its members. The court order did not say anything about the other two reasons for dismissal asserted by ICA.
 
 
 5
 No separate final judgment was ever entered after the district court granted the motion to dismiss, nor did the order say the dismissal was with prejudice or without leave to amend. The Union attempted to file its first amended complaint, which asserted that the Union had its own independent basis for standing to sue on the payment bond. The Union received a letter from the district court's law clerk dated December 23, 1988, which stated that the district court's dismissal was with prejudice and did not allow leave to amend. The amended complaint was returned and never filed.
 
 
 6
 On January 13, 1989, the Union filed a Notice of Appeal from the December 2 order granting the motion to dismiss and the December 23 letter refusing to file the amended complaint.[1] On January 26, 1989, the district court issued a supplemental order explaining that the reason it did not accept the first amended complaint was that it had already determined that plaintiff lacked standing.
 
 STANDARDS OF REVIEW
 
 7
 We review the district court's determination on standing de novo. Bruce v. United States, 759 F.2d 755, 758 (9th Cir.1985). We review the district court's denial of leave to amend (or refusal to accept the Union's First Amended Complaint) for abuse of discretion. Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir.1984). However, a party is entitled to amend once as a matter of law at any time before a responsive pleading is served. Fed.R.Civ.P. 15(a). A district court may abuse its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of a material fact. Hunt v. National Broadcasting Co., Inc., 872 F.2d 289, 292 (9th Cir.1989) .
 
 DISCUSSION
 I.
 
 8
 A. Associational Standing Under Federal Standing Law
 
 
 9
 The Union argues that California standing law applies in this diversity suit. Even if the district court was correct that federal law applies, the Union argues that the special representative obligations it has to its members should allow it to seek damages on behalf of those workers allegedly owed past wages in this case. Assuming for the moment that the district court was correct that standing in this case depends entirely on federal law, the court was correct in rejecting the Union's "associational standing" argument.
 
 
 10
 In Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 342-43, 97 S.Ct. 2434, 2440-41, 53 L.Ed.2d 383 (1977), the Supreme Court set out three requirements for an association to have standing to bring suit on behalf of its members:
 
 
 11
 an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.
 
 
 12
 Hunt, 432 U.S. at 343, 97 S.Ct. at 2441.
 
 
 13
 The Union acknowledges that no federal court has allowed an association standing to seek monetary relief on behalf of its members. See Telecommunication Research & Action Center v. Allnet Communication Servs., Inc., 806 F.2d 1093, 1095 (D.C.Cir.1986). The courts that have addressed this issue have consistently held that claims for monetary relief necessarily involve individualized proof and thus the individual participation of association members, thereby running afoul of the third prong of the Hunt test.
 
 
 14
 In Alaska Fish & Wildlife Federation and Outdoor Council, Inc. v. Dunkle, 829 F.2d 933 (9th Cir.1987), we granted the association "associational standing" to assert its members' claims because it sought "declaratory and prospective relief rather than money damages, [and thus] its members need not participate directly in the litigation." Id. at 938. Here the Union seeks monetary relief requiring the participation of individual members. If the federal rules of standing apply, the district court correctly ruled that the Union lacked standing.
 
 
 15
 The Union points out that courts have not generally declared a per se rule against granting an association standing to seek money damages. It argues that it has special representative obligations to its members that make it an appropriate association to sue for damages on behalf of its members. We find this argument unpersuasive.
 
 
 16
 Even assuming, arguendo, that a Union does have a special representative duty to its members that distinguishes it from many other associations, there is absolutely no authority that such a factor would negate the required application of the test established in Hunt. In this case, it is clear that individual Union members will have to participate at the proof of damages stage. There is no escaping the fact that the Union in this case cannot overcome the third hurdle placed before it by Supreme Court precedent.
 
 
 17
 B. Associational Standing Under California Law
 
 
 18
 Assuming, arguendo, that California standing law is applicable once the federal constitutional requirements for standing are met, the Union would still fail in its effort to obtain associational standing to seek damages for its members. In Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 v. Unemployment Insurance Appeal Board, 190 Cal.App.3d 1515, 236 Cal.Rptr. 78 (1987), a California appellate court looked to the federal law of associational standing and adopted its reasoning. In Teamsters the court granted the union standing because it met the requirements of the Hunt test since it was not seeking monetary relief, nor was there any other reason that individual members would need to participate in the case. Thus it appears that the requirements for associational standing under California and federal law are nearly identical.[2]
 
 
 19
 The Union cites two cases it argues would give it standing under California law. The first, I.B.E.W. v. Board of Harbor Commissioners, 68 Cal.App.3d 556, 137 Cal.Rptr. 372 (1977), involved an attempt by a union to enforce the prevailing wage provisions of the California Labor Code. The court affirmed the lower court's sustaining of the defendant's demurrer to the extent that the complaint sought monetary damages because the complaint did not allege compliance with the claims provision of the Governmental Tort Act. Id. at 560, 137 Cal.Rptr. 372. The court then dismissed the part of the complaint seeking to enforce the wage provisions on the basis that the project in question was not a "public work." Id. at 563, 137 Cal.Rptr. 372. Finally, the court held that the union lacked standing to bring an action to enforce the prevailing wage provisions because its members were all paid above the prevailing wage.
 
 
 20
 It is the standing portion of Board of Harbor Commissioners that the Union believes supports its position that California courts would grant it standing in this case. The Union argues that if the union members in Board of Harbor Commissioners had been paid below the prevailing wage, then the union would have had standing. This argument stretches Board of Harbor Commissioners almost beyond recognition. The court in that case merely held that the plaintiff union did not have standing because its members did not have standing, the union failed the first prong of the Hunt test. Reduced to its core, the Union's argument is that the court in Board of Harbor Commissioners rejected the second and third prongs of the Hunt test. If a court holds that a cause of action fails because one of many essential elements is absent, that decision certainly may not be read as rejecting the necessity of each of the other elements. In short, the implications of Board of Harbor Commissioners are consistent with federal "associational standing" law. The union's standing failed because its individual members did not have standing (the first prong of the Hunt test).
 
 
 21
 Next, the Union cites Bernard v. Industrial Indemnity Insurance Co., etc., 162 Cal.App.2d 479, 329 P.2d 57 (1958). In Bernard, trustees of a union employees' health and welfare trust fund sued on a payment bond for unpaid trust fund contributions. The court held that even if the trustees were not technically the assignees of the workers' rights to the trust fund contributions, the fact that the employers were to contribute directly to the fund and the trustees were solely responsible for collecting any and all such contributions meant that they were effectively the assignees of the employees' rights to the funds. Thus the court allowed the trust fund to sue on the employee's behalf.
 
 
 22
 Bernard provides the strongest support for the Union's position because the trust fund was actually allowed to seek monetary relief on behalf of its members. Important factual differences exist between Bernard and the present case, however, and these differences support a conclusion that the rationale of Bernard would not be applicable here.
 
 
 23
 The key differences are that the trust fund in Bernard always collected and was legally responsible for collecting the employer contributions to the fund. Further, the collected money was maintained in a lump sum and was to be used to create general health and welfare benefits to the union members. Here, however, union workers collected their own wages and individual wages were not maintained in a common pool of funds but were particular to the individual workers.
 
 
 24
 The significance of these differences is that in Bernard the trust could have pursued the monetary relief actions of its beneficiaries without individual participation of the members (by seeking to collect what it always collected), and would not have needed to distribute the monetary relief to the individual claimants according to some measure of what each deserved (the money would have just been part of the fund). Here, the Union would require the individual participation of members to determine the amount owed, and would have to distribute the recovered amount according to some measure of what each had earned. These distinctions are likely determinitive, and the more recent Teamsters decision indicates that a California court would not extend Bernard to this case.
 
 
 25
 Thus, the Union would not meet the requirements for obtaining associational standing under either federal or California law. While California standing law might achieve different results from federal law under certain circumstances, the Teamsters decision is a strong indication that, at least on the particular question this case involves, California law mirrors the federal law of standing. We therefore affirm the district court's order denying the union associational standing without deciding whether state or federal standing law applies.
 
 II.
 
 26
 Refusal to File the First Amended Complaint
 
 
 27
 The district court did not indicate in its initial order that it was dismissing with prejudice and without leave to amend. Nor did it enter a separate judgment. Subsequent to the dismissal the Union attempted to amend its complaint for the first time to show that it had an independent basis for standing. No formal order was entered stating why the first amended complaint was not accepted. Instead, the law clerk to the district court wrote a letter to the Union explaining that the dismissal order was with prejudice and without leave to amend.
 
 
 28
 At this point the Union filed a notice of appeal. After the filing of the appeal the district court issued a supplemental order explaining why it would not grant the Union leave to file its first amended complaint. The court reasoned that because it held in the original dismissal order that the Union did not have standing, the dismissed complaint was not subject to amendment.
 
 
 29
 As a general proposition, this is incorrect. Often a plaintiff will be able to amend its complaint to cure standing deficiences. To deny any amending of the complaint places too high a premium on artful pleading and would be contrary to the provisions and purpose of Fed.R.Civ.P. 15. Rule 15(a) provides that amendment shall be granted "freely when justice so requires." Denial is proper only when amendment would be clearly frivolous, unduly prejudicial, cause undue delay or a finding of bad faith is made. See Moore v. Kayport Packaging Exp. Inc., 885 F.2d 531, 538, 539 (9th Cir.1989).
 
 
 30
 Thus, the district court did not have discretion to reject the Union's first amended complaint. Remanding the case to the district court to determine the viability of the Union's new standing theory is appropriate because neither party has addressed the merits or futility of the amended complaint. See United States v. Crain, 589 F.2d 996, 1001 (9th Cir.1979). Also, if the new theory of standing is successful, the alternative reasons ICA presented for dismissing the complaint would have to be considered.
 
 
 31
 Moreover, the question of the Union's independent standing is sufficiently complicated and intertwined with other issues that this court would benefit by the district court's consideration of the issue, and by further briefing on the issue should it come back on appeal. See Mir v. Fosburg, 646 F.2d 342, 346 (9th Cir.1980); Breier v. Northern California Bowling Proprietor's Association, 316 F.2d 787, 790 (9th Cir.1963) ("It would be undesirable to resolve important legal questions on the basis of allegations which are incomplete.... We also decline to speculate as to whether the amended complaint [would] be legally sufficient.") Accordingly, we remand this issue in light of our decision.
 
 CONCLUSION
 
 32
 Because California and federal associational standing requirements lead to the same conclusion, namely, that the Union did not have associational standing, we AFFIRM the district court order dismissing the Union's claim on behalf of its members for lack of standing. We REVERSE the district court order rejecting the amended complaint and REMAND for the court to consider whether the Union can establish an independent rather than associational basis for standing. The parties shall bear their own costs in this appeal. AFFIRMED in part; REVERSED in part and REMANDED.
 
 
 
 [1]
 The Notice of Appeal was timely filed even though filed more than thirty days after the dismissal order because no separate final judgment was ever entered. Vernon v. Heckler, 811 F.2d 1274, 1276 (9th Cir.1987)
 
 
 [2]
 The California appellate court did perform one step in its analysis of the associational standing issue that is not done under federal law. It determined that the union was "beneficially interested" in the dispute. The court stated that this analysis was required by Cal.Code of Civ.Proc. Sec. 1086 because the party sought a writ of mandate. Teamsters, 190 Cal.App.3d at 1524, 236 Cal.Rptr. 78. This additional requirement is not significant for this case. If anything it would make California law on associational standing more strict than its federal counterpart