**De You CHEN, Petitioner–Appellant,**

**v.**

**IMMIGRATION AND NATURALIZA-TION SERVICE; Thomas J. Schilt-gen, Respondents–Appellees.**

No. 95–16179.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 13, 1996.

Decided Sept. 6, 1996.

Paul M. Isel, Tsoi & Isel, Los Angeles, California; Helen Morris, Catholic Legal Immigration Netword, Inc., Washington, D.C.; for petitioner-appellant.

Patricia A. Duggan, Assistant United States Attorney, San Francisco, California; Kristin A. Cabral, Office of Immigration Litigation, Civil Division, Washington, D.C.; for respondents-appellees.

Before: SCHROEDER, D.W. NELSON and KOZINSKI, Circuit Judges.

SCHROEDER, Circuit Judge

De You Chen ("Chen"), a native and citizen of the People's Republic of China ("PRC"), appeals the district court's denial of his petition for writ of habeas corpus under 8 U.S.C. § 1105a(b). He seeks relief from a final order of the Board of Immigration Appeals ("BIA") denying his application for political asylum under 8 U.S.C. § 1158. Chen argues that the PRC's application of its one child per couple birth control policy constitutes a basis for such relief. He contends that the BIA's decision in *Matter of Chang,* Int. Dec. 3107 (BIA 1989), holding that the PRC's family planning policies do not constitute a ground for political asylum, is not dispositive because it has been overruled by administrative action. He further contends that an executive order also overruled *Chang,* and created a basis for asylum. The U.S. Courts of Appeals for the Second and Fourth Circuits have rejected similar contentions under factual circumstances indistinguishable from the instant one. *Zhang v. Slattery,* 55 F.3d 732 (2d Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 1271, 134 L.Ed.2d 217 (1996); *Chen v. Carroll,* 48 F.3d 1331 (4th Cir.1995). We agree with the conclusions reached in those decisions, and affirm the district court's denial of Chen's petition.

**Facts and Procedural History**

De You Chen and Lan–Zheng Sun are married, and now have three children, two girls, and the youngest, a boy. After the birth of the second girl, birth control authorities fined the couple 2,000 RMB (the PRC's currency) for having a second child within four years of the first. The authorities also required the implantation of an intra-uterine device in Sun. Because Chen and Sun wanted a boy, however, they had the device illegally removed. In 1990, Sun became pregnant again. Upon learning of her pregnancy, the authorities threatened to destroy the couple's home if she did not abort the child. Chen and Sun responded by fleeing to a nearby village. The authorities then destroyed the couple's home, extorted information from Chen's father, and fined him 2,000 RMB. After Sun gave birth, the couple returned to their original village. The authorities scheduled Sun for a sterilization surgery, imposed a 10,000 RMB fine, and barred all three children from attending school. Because Sun was too ill for surgery, the authorities ordered that Chen be sterilized instead. In August, 1991, Chen fled his village to hide at his workplace. In November 1992, his sister warned him that the authorities would find him, jail him and sterilize him. Chen then fled China aboard a boat headed for the U.S.

On May 12, 1993, Chen arrived in California. Upon arrival, the Immigration and Naturalization Service arrested and detained him, and placed him in exclusion proceedings. Chen conceded excludability, but applied for political asylum and withholding of deportation on the basis of his political opinion and membership in a particular social group pursuant to 8 U.S.C. §§ 1158 & 1253(h). On July 6, 1994, the Immigration Judge denied Chen's application, relying on *Chang* and *Matter of G,* Int. Dec. 3215 (BIA 1993). Chen appealed. The BIA dismissed his ap-

peal on October 26. Chen then filed a petition for writ of habeas corpus, urging only his asylum claim, and seeking relief from the BIA's final exclusion order. On May 19, 1995, the district court denied his petition, holding that the BIA had properly applied *Chang*. Chen timely appeals.

### Legal and Political Developments

Under 8 U.S.C. § 1158, the Attorney General has discretion to grant asylum to any person who is a "refugee," as defined in 8 U.S.C. § 1101(a)(42)(A). A "refugee" is any person who is unable or unwilling to return to his or her country of origin because of past persecution or a "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). In May 1989, the BIA handed down *Chang*, which held that the PRC's implementation of its birth control policies does not in itself constitute a basis for relief under the INA. Int. Dec. 3107, at 10–11. The BIA has consistently followed *Chang*, notwithstanding subsequent legislative and administrative activity that threatened to overrule it.

In 1989, Congress attempted to overturn *Chang* by attaching the Armstrong–DeConcini amendment to the Emergency Chinese Immigration Relief Act of 1989, a bill introduced in response to the events in Tiananmen Square in June of 1989. The amendment would have provided for "careful consideration" of any asylum applicant who expressed a fear of persecution relating to the PRC's birth control policy. Emergency Chinese Immigration Relief Act of 1989, § 3(a), H.R. 2712, 101st Cong., 1st Sess. (1989). President Bush, however, vetoed the bill for reasons unrelated to the substance of the Armstrong–DeConcini amendment. Memorandum of Disapproval for the Bill Providing Emergency Chinese Immigration Relief, *reprinted in* Public Papers of the Presidents of the United States 1611–12 (Nov. 30, 1989). He ordered administrative action to provide asylum applicants with the same protections envisioned in the amendment by directing the Attorney General and Secretary of State to pro-

vide "enhanced consideration" under the "immigration laws for individuals from any country who express a fear of persecution upon return to their country related to that country's policy of forced abortion or coerced sterilization." *Id.* Meanwhile, Congress failed to override the veto. Its subsequent efforts to overturn *Chang* have also failed.

Attorney General Thornburgh responded to President Bush's directive by publishing an interim rule with request for comments on January 29, 1990, providing that coercive birth control policies could serve as a basis for asylum. 55 Fed.Reg. 2803, 2805 (1990) (to be codified at 8 C.F.R. pts. 208 & 242). Specifically, the Interim Rule amended the regulation on the applicant's burden of proof, providing, in part, that:

(1) Aliens who have a well-founded fear that they will be required to abort a pregnancy or to be sterilized because of their country's family planning policies may be granted asylum on the ground of persecution on account of political opinion.

(2) An applicant who establishes that the applicant (or applicant's spouse) has refused to abort a pregnancy or to be sterilized in violation of a country's family planning policy, and who has a well-founded fear that he or she will be required to abort the pregnancy or to be sterilized or otherwise persecuted if the applicant were returned to such country may be granted asylum.

*Id.* On April 11, 1990, President Bush incorporated the Interim Rule by reference into Executive Order 12,711, which directed the Attorney General and the Secretary of State to

provide for enhanced consideration under the immigration laws for individuals from any country who express a fear of persecution upon return to their country related to that country's policy of forced abortion or coerced sterilization, as implemented by the Attorney General's regulation effective January 29, 1990.

Executive Order 12,711, § 4, 55 Fed.Reg. 13897 (1990).

On July 27, 1990, however, Attorney General Thornburgh published a final rule on the procedures for determining asylum under 8 U.S.C. § 1158 and withholding of deportation under 8 U.S.C. § 1253(h). 55 Fed.Reg. 30674 (1990) (to be codified at 8 C.F.R. pts. 3, 103, 208, 236, 242 & 253). This rule, a comprehensive revision of the regulations governing asylum and withholding claims, rewrote the regulations addressed in the Interim Rule, and did not provide for asylum based on persecution due to a country's family planning policies. *Id.* The language or substance of the Interim Rule did not appear in the July 1990 rule.

On January 15, 1993, Attorney General Barr responded to public comments on the Interim Rule, and signed a final rule. Att'y Gen. Order No. 1659–93 (the "January 1993 Rule"). Unlike the Interim Rule, which merely suggested that refugee status could be granted to individuals facing forced abortion or sterilization, the final rule mandated the grant of such status upon the proper showing. *Id.* In addition, the commentary to the January 1993 Rule stated that

> [o]ne effect of this rule is to supersede the Board decision in *Matter of Chang,* Int. Dec. No. 3107 (BIA 1989), to the extent that it held that the threat of forced abortion or involuntary sterilization pursuant to a government family planning policy does not give rise to a well-founded fear of persecution on account of political opinion, without an additional showing on the issue of the applicant's actual political opinion.

*Id.* at 4.

The January 1993 Rule was scheduled to take effect on the date of publication in the Federal Register. *Id.* However, it was never published. President Clinton, following his inauguration on January 22, 1993, directed his newly appointed director of the Office of Management and Budget to issue a memorandum requesting that each agency withdraw from the Federal Register regulations that had not yet been published. 58 Fed. Reg. 6074 (1993). The January 1993 Rule was withdrawn in accordance with this directive. The Clinton administration has not resubmitted it or a similar rule since. Neither the January 1993 Rule nor the Interim Rule has appeared in any of the annual codifications of the Code of Federal Regulations.

## Whether *Chang* Has Been Overruled by Administrative Action

■ Chen argues that the Interim Rule overruled *Chang* and retains effect in spite of the July 1990 rule. He also argues that the unpublished January 1993 rule reaffirmed the Interim Rule and is binding on this court. The district court rejected his contentions. We review the district court's denial of Chen's petition for writ of habeas corpus *de novo.* *De Brown v. Department of Justice,* 18 F.3d 774, 775 (9th Cir.1994).

On the face of the regulations, the Interim Rule became obsolete with the issuance of the July 1990 rule. The Interim Rule amended the regulations on an asylum applicant's burden of proof by adding provisions that gave the Attorney General discretion to grant asylum to aliens who had a well-founded fear of forced abortion or sterilization if returned to their country. 55 Fed.Reg. 2803, 2805 (1990) (to be codified at 8 C.F.R. 208.5(b)(1) & (2)). However, the July 1990 rule, which constituted a comprehensive revision of the procedures to be used in determining asylum, did not include the substance of the Interim Rule. 55 Fed.Reg. 30674, 30674–687 (1990). The Interim Rule has never been published in an annual codification of 8 CFR. Thus, it "appears not to have survived the [July 1990] comprehensive revision of the asylum and withholding regulations." *Chen,* 48 F.3d at 1337; *accord Zhang,* 55 F.3d at 747 (July 1990 rule "quietly repealed" the Interim Rule).

Chen argues that the repeal was nevertheless invalid because the Justice Department, when it issued the July 1990 final rule, failed to provide an opportunity for notice and comment, *see* Administrative Procedure Act, 5 U.S.C. § 553, and a reasoned analysis for its change in course. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Automobile Ins. Co.,* 463 U.S. 29, 41–42, 103 S.Ct. 2856, 2865–66, 77 L.Ed.2d 443 (1983). The Fourth Circuit rejected this contention by holding that the Interim Rule was not a legislative rule but a general policy statement, and for that reason the Justice Department was not re-

quired to provide notice, an opportunity for comment, and a reasoned explanation for the repeal. *Chen*, 48 F.3d at 1340–41. We do not rest on the Fourth Circuit's analysis, however, for we agree with the Second Circuit that if the Interim Rule was a legislative rule rather than a general policy statement, then it never had legal effect because it was not promulgated after notice and an opportunity for comment as required by the Administrative Procedure Act. *Zhang*, 55 F.3d at 744–47 ("the January 1990 interim rule was never properly promulgated as a legislative rule under the Administrative Procedure Act"); 5 U.S.C. § 553.

Chen also relies on the unpublished January 1993 rule, but on its own terms, this rule was to become effective only on the date of publication in the Federal Register. In accordance with President Clinton's directive, this rule was withdrawn from publication. It was never subsequently published; therefore, it has no legal effect and is not binding on this court. In sum, *Chang* was not overruled by administrative action.

### Whether the Executive Order Creates a Basis for Asylum

█ Executive Order 12,711 cannot provide a basis for asylum unless it is judicially enforceable. An executive order is judicially enforceable only if it has the force and effect of law, *Chrysler Corp. v. Brown*, 441 U.S. 281, 303–04, 99 S.Ct. 1705, 1718–19, 60 L.Ed.2d 208 (1979); *Zhang*, 55 F.3d at 748; *Chen*, 48 F.3d at 1338–39; *In Re Surface Mining Regulation Litigation*, 627 F.2d 1346, 1357 (D.C.Cir.1980). For the following reasons, this executive order did not have the force and effect of law.

Executive Order 12,711 directed the Attorney General and Secretary of State to provide enhanced consideration for asylum to individuals who expressed a fear of persecution related to their country's coercive family planning policies, "as implemented by the Attorney General's regulation effective January 29, 1990." Executive Order 12,711, § 4, 55 Fed.Reg. 13897 (1990). The Executive Order thus incorporated the standards set forth in the Interim Rule. However, as we discussed above, the Interim Rule has been revoked. The revocation deprived the Executive Order of the regulation on which it depended, thereby rendering the relevant part of the order obsolete.

Moreover, the Executive Order lacked the force and effect of law because it was never grounded in a statutory mandate or congressional delegation of authority. *See Chrysler Corp.*, 441 U.S. at 304–05, 99 S.Ct. at 1718–19; *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585–89, 72 S.Ct. 863, 866–67, 96 L.Ed. 1153 (1952); *Zhang*, 55 F.3d at 748; *Chen*, 48 F.3d at 1338–39; *In Re Surface Mining Regulation Litigation*, 627 F.2d at 1357. The Executive Order states as its authority the "laws of the United States of America," but fails to mention any specific section in the federal code. Chen argues that 8 U.S.C. §§ 1103(a), 1101(a)(42)(B) & 1182(f) provide the requisite legislative authority. However, § 1103(a) delegates general authority over immigration affairs to the Attorney General, not the President; § 1101(a)(42)(B) applies only to persons physically residing outside the United States, not to persons in exclusion proceedings; and § 1182(f) is not relevant because it pertains to suspending immigration. Thus, Congress did not explicitly delegate the requisite authority.

█ Chen argues that Congress impliedly consented to the Executive Order by failing to override the President's veto of the Emergency Chinese Immigration Relief Act and the Armstrong–DeConcini amendment. He emphasizes that a number of Senators who voted to uphold the veto apparently did so after receiving the President's assurance that he would take administrative action to overrule *Chang*. *See Zhang*, 55 F.3d at 748. It is not clear, however, what motivated the other Senators to uphold the veto. Moreover, any inference drawn from Congress' failure to act is generally unreliable. *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 306, 108 S.Ct. 1145, 1154, 99 L.Ed.2d 316 (1988). Chen points to no other indication of an implicit congressional delegation of authority. In the absence of a stronger delegation than acquiescence in the President's veto, we cannot conclude that Congress ratified the Executive Order. Therefore, it lacks

the force of law. We conclude that *Chang* has not been overruled by executive order.

### Review of the Denial of Chen's Asylum Petition

■ Chen contends that even if there has never been an express legislative or executive directive authorizing asylum on the basis of the PRC's coercive family planning policies, he is nevertheless entitled to asylum. He argues that the BIA's legal analysis in *Chang* is not consistent with the INA. The government responds that *Chang* is fully consistent with the INA, and entitled to deference under *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). The Second and Fourth Circuits agreed with the government in *Zhang,* 55 F.3d at 750, and *Chen,* 48 F.3d at 1342, and so do we.

This result is compelled by *INS v. Elias–Zacarias,* 502 U.S. 478, 480–82, 112 S.Ct. 812, 815, 117 L.Ed.2d 38 (1992), a recent Supreme Court decision interpreting the asylum provisions of the INA. In *Elias–Zacarias,* the Court addressed whether a guerrilla organization's efforts to coerce the petitioner into joining their movement necessarily constituted persecution "on account of political opinion." 502 U.S. at 478–79, 112 S.Ct. at 814. The Court stated that a victim's refusal to cooperate with a potential persecutor is not necessarily expressive conduct constituting a political opinion, and that the persecutor must act because of the victim's political opinion, rather than simply because of his refusal to cooperate. *Id.* at 480–83, 112 S.Ct. at 815–16. It then denied relief because the petitioner's refusal to join was not an expression of political opinion, and because the guerrillas did not persecute him out of an erroneous belief that his refusal was politically motivated. *Id.* at 482–85, 112 S.Ct. at 816–17.

The BIA's decision in *Chang* is consistent with *Elias–Zacarias.* In *Chang,* the BIA held that the petitioner's refusal to comply with the PRC's one child per couple policy did not constitute an expression of political opinion, and that forced sterilization for noncompliance did not constitute persecution on account of political opinion. Int. Dec. 3107, at 15.

■ Eligibility for asylum required evidence of persecution for reasons other than general population control alone, for example, disparate treatment against those who publicly opposed the policy. *Id.; see also Matter of G,* Int. Dec. 3215 at 22 (BIA 1993). We conclude that "[t]he Board's interpretation in *Matter of Chang* of the statute governing asylum is not unreasonable" and is "entitled to deference." *Chen,* 48 F.3d at 1342; *accord Zhang,* 55 F.3d at 749–51.

Chen argues that he was persecuted, and has a well-founded fear of persecution, because of his political opposition to the PRC's birth control policies. However, his only relevant acts have been to violate the birth control policies, and to explain that he did this because he wanted a son. Neither of these acts constitute political expression. Moreover, he has not produced evidence that the PRC imposed, or seeks to impose, its sanctions on him for any reason other than population control. There is no indication that the PRC is motivated by Chen's political opinions.

Finally, Chen contends that he faced persecution on the basis of imputed political opinion, which occurs when a persecutor falsely attributes an opinion to the victim and then persecutes the victim because of that mistaken belief about the victim's views. This remains a valid ground for asylum after *Elias–Zacarias, Canas–Segovia v. INS,* 970 F.2d 599, 601–02 (9th Cir.1992), but Chen has not produced evidence of such a mistaken imputation.

Chen also contends that the PRC's violation of his fundamental human right to procreate, as protected by the United Nations Declaration of Human Rights, G.A. Res. 217 (1948), and other international human rights instruments, constitutes persecution. However, the INS is authorized to grant asylum relief only against persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Chen fails to explain how the denial of his right to procreate

comes within any of these protected grounds. We therefore reject his contention.

AFFIRMED.